STANDARD SALT & CEMENT COMPANY v. NATIONAL
SURETY COMPANY.

NATIONAL IRON COMPANY v. SAME.[1]

July 14, 1916.

Nos. 19,888, 19,889—(247, 248).

**City of Duluth — effect of new charter on remedy upon surety bond to city.**

1. On July 18, 1912, the defendant surety company executed a bond
to the city of Duluth to secure those furnishing labor and materials to
a contractor upon a paving contract. The charter authorized the bond
and provided that no action should be maintained upon it, unless notice
was given the contractor and his surety within 90 days and action
brought within one year after the last item furnished. The last item
was furnished on December 20, 1912. Notice was not given and action
was not brought within the time fixed by the charter. At an election
held on December 2, 1912, a new charter was ratified and under the
Constitution became effective on January 2, 1913. It is *held* that the
effect of the adoption of the new charter was to abrogate or repeal the
former one; that the obligation of the contract evidenced by the bond
continued; that the repeal affected the remedy only and did not uncon-
stitutionally impair the obligation of the contract; that, the 90-day
period and the year limitation not having run when the new charter
became effective, suit could be brought without giving notice and after
the year; and that upon the repeal the state statute containing a con-
dition and limitation of somewhat different effect was not operative
upon the prior accrued cause of action.

**Principal and surety — paid surety not released by extension of time to
creditor, when.**

2. After the performance of the contract the contractor gave the
creditor a note for six months, and thereby without the consent of the
surety extended the payment of the obligation. The surety company
is a paid surety. It is *held* that the *strictissimi juris* rule of construc-
tion applicable to gratuitous sureties does not apply to paid sureties;

[1]Reported in 158 N. W. 802.

that the surety was not released without a showing of harm resulting from the extension; and that the evidence does not conclusively show harm.

Two actions in the district court for St. Louis county, one by the Standard Salt & Cement Company to recover $2,636.54 for materials sold and delivered to P. McDonnell and the other by the National Iron Company to recover $218 for other materials, both actions being upon the bond of defendant surety company in favor of the city of Duluth to secure the performance of a certain contract by defendant McDonnell for the improvement of part of East Fourth street in the city of Duluth. The cases were tried together before Cant, J., who made findings and ordered judgment in favor of each plaintiff for the amount demanded in its complaint.

Defendant's motions for judgment in its favor or for new trials were denied. From the judgments entered pursuant to the orders for judgment, defendant appealed. Affirmed in both cases.

*Washburn, Bailey & Mitchell,* for appellant.
*Alford & Hunt,* for respondents.

DIBELL, C.

Two actions on a contractor's bond tried together. There were findings and judgments for the plaintiffs. The defendant surety company appeals from the judgments. The defendant contractor does not appear on this appeal.

Two general questions are presented:

(1) Whether an action on the bond was barred by the provisions of the city charter pursuant to which it was executed, requiring notice to be given the contractor and surety within 90 days after the date of the last item furnished and suit to be brought within a year.

(2) If not, whether an extension to the contractor by the plaintiff of the time of payment, without the consent of the surety, released the surety without a showing that harm resulted; and whether resulting harm was shown.

1. On July 18, 1912, the defendant McDonnell entered into a contract with the city of Duluth for paving a street. On the same day he and

the defendant surety company executed to the city a bond, to secure among other things the payment of materialmen. Under the provisions of the charter whoever furnished material upon the contract was a party in interest under the bond and was authorized to maintain an action upon it in his own name without joining the city. The plaintiff Standard Salt & Cement Company and the plaintiff National Iron Company furnished materials. The National Iron Company furnished its last item on December 20, 1912. For the purposes of the case we assume that the Standard Company furnished its last item on the same date, though it claims that it was furnished on June 30, 1913.

The charter provided that no action should be maintained upon the bond, unless the claimant, within 90 days after furnishing the last item, served upon the principal and surety a written notice, specifying the nature and amount of his claim and the date of the last item, nor unless action was commenced within one year after such date. Neither of the plaintiffs gave notice within 90 days nor commenced an action within one year. The surety company claims that their causes of action are barred.

On December 2, 1912, the city ratified a new charter. The Constitution provides that upon its ratification a charter "shall, at the end of thirty days thereafter, become the charter of such city or village as a city, and supersede any existing charter and amendments thereof." Const. art. 4, § 36. The charter became effective and superseded the former charter on January 2, 1913. Woodbridge v. City of Duluth, 121 Minn. 99, 140 N. W. 182. The new charter contained no condition requiring the giving of a notice or limiting the time within which an action might be brought nor any provision relative to bonds.

The suggestion is made that the bond was not effective after the repeal of the statute which authorized and required it. Under our decisions a municipal corporation has no authority without a legislative grant of power to take contractors' bonds for the benefit of those furnishing material, and contracts taken without authority are void. Breen v. Kelly, 45 Minn. 352, 47 N. W. 1067; Park Bros. & Co. v. Sykes, 67 Minn. 153, 69 N. W. 712; Eidsvik v. Foley, 99 Minn. 468, 109 N. W. 993. This holding is upon the ground of the legal incapacity of the city to act as trustee for the beneficiaries. The bond was a valid obligation when executed, and under it rights arose. The adoption of the new

charter did not affect its validity or obligation. It has been held that the repeal of a statute giving a mechanic's lien destroys the right of lien though it had accrued. Bailey v. Mason, 4 Minn. 430 (546); Dunwell v. Bidwell, 8 Minn. 18 (34); Wilson v. Simon, 91 Md. 1, 45 Atl. 1022, 80 Am. St. 427. The theory of these cases is that the right does not arise from contract, but is dependent upon the statute and falls within it. The bond is in no such sense dependent upon the statute. It is a contract. The surety and his principal need no authority to bind themselves by it. The only office of the statute is to authorize the municipalty to assume in the bond the position of a trustee for the materialmen. It was valid when made and when the materials were furnished by the plaintiffs. Its obligation comes from contract and not from the statute and survives its repeal.

The defendant contends that if the obligation of the bond survives the repeal of the charter the provision as to the 90-days' notice and the bringing of an action within a year follows as a part of it, and applies when its enforcement is sought. If so, the plaintiffs are barred. Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1113, involved the St. Paul home rule charter which did not contain a provision like that now under consideration. The general statute contained a provision of like purpose but of different requirements. The question was whether a complaint on the bond must allege notice and the answer depended upon whether the charter or statute controlled. The court said: "The provision in the general law requiring notice within 90 days after the last item of labor or materials is done or performed, before bringing an action on the bond, is not analagous to a statute of limitations, but it is a condition precedent which must be performed before the right to bring an action on the bond accrues. Or, in other words, it is a condition or burden placed upon the beneficiaries of the bond which they must perform or remove before they can avail themselves of its benefits. It is as much so as would be the case if this provision of the general statute was set out as a proviso in the bond." The direct holding was that the charter provision was exclusive. The statute in its present form is found in G. S. 1913, § 8249 (R. L. 1905, § 4539, as amended by Laws 1909, p. 501, c. 413, § 1). It provides that notice must be served within 90 days after the completion and acceptance of the contract and suit within one year after the notice.

This statute was under consideration in Architectural Decorating Co. v. National Surety Co. 115 Minn. 382, 132 N. W. 289. Prior to its amendment it provided that notice must be given within 90 days after the last item and suit brought within one year after the accrual of the cause of action. The amendment provided for notice within 90 days after the completion of the contract and acceptance of the building and suit within a year after the notice. Notice was given within the time required by the amendment, but not within the time required by the original act. The bond was given prior to the amendment. The plaintiff furnished the material and the default occurred subsequent to it. The court held that the amendment affected the remedy and not the obligation of the contract. It said: "The provision requiring notice to be given to the company does not create or enlarge this obligation. It is simply an essential step in the enforcement of an existing obligation, and clearly affects the remedy, and not the substantive rights, of the parties under the bond. The fact that this statute must be construed as if it were a part of the written bond, and that it places a condition or burden upon the beneficiaries of the bond which they must perform before they can avail themselves of its benefits, does not indicate that the giving of the notice is a condition to the creation of the obligation. It is a condition precedent to the bringing of the action—a necessary step in the enforcement of the remedy." This case was before the Supreme Court of the United States on writ of error in National Surety Co. v. Architectural Decorating Co. 226 U. S. 276, 33 Sup. Ct. 17, 57 L. ed. 221. It was affirmed and the same view was taken. The court said: "In the case now before us, we agree with the Minnesota Supreme Court in the view that the requirement of a preliminary notice to the obligors as a condition precedent of an action upon the bond, affects the remedy and not the substantive agreement of the parties. And although the statute as it stood when the bond was given * * * must, under Grant v. Berrisford, be treated as if written into the contract, it still imposed a condition not upon the obligation, but only upon the remedy for breach of the obligation. Therefore, the subsequent statute * * * effected merely a change in the remedy, without substantial modification of the obligation of the contract." These two cases determine that the provision for a notice concerns the remedy only, and does not affect the obligation of the contract within

Const. (U. S.) art. 1, § 10. We have not overlooked State v. Smith, 62 Minn. 540, 64 N. W. 1022, cited by appellant, which involved a saving clause continuing rights accrued under a repealed statute.

The provision as to bringing an action within a year gives no trouble. It is a statute of limitation. A statute of limitation affects the remedy and not the right. 2 Dunnell, Minn. Dig. § 5587, and cases cited. The repeal of the statute leaves the action without a limitation. Lambert v. Slingerland, 25 Minn. 457; Kipp v. Johnson, 31 Minn. 360, 17 N. W. 957; Lunt v. Stevens, 24 Me. 534; Stewart v. Tennant, 52 W. Va. 559, 44 S. E. 223; San Francisco & F. Land Co. v. Hartung, 138 Cal. 223, 71 Pac. 337; Davis v. Mills, 121 Fed. 703, 58 C. C. A. 123. "It is conceded that no one has a vested right in any particular remedy, and that the legislature may change or modify the existing remedies for the enforcement and protection of contract rights so long as an adequate remedy remains." State v. Krahmer, 105 Minn. 422, 117 N. W. 780, 21 L.R.A. (N.S.) 157. "No one can claim a right to the continuance of a mere statute of limitation until a cause of action against him is barred thereby." State v. Foster, 104 Minn. 408, 116 N. W. 826.

Upon the repeal of the charter the similar provision of the general statute, G. S. 1913, § 8249 (R. L. 1905, § 4539, as amended by Laws 1909, p. 501, c. 413, § 1), giving a similar but different condition and a similar but different limitation, did not become applicable. The charter provision, as held in Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1113, was exclusive while in effect. When repealed the general statute was not operative upon rights accrued. Whether the general statute applies to contracts executed or performed after the repeal is not before us.

We hold that the effect of the adoption of the new charter was to abrogate or repeal the former one; that the obligation of the contract evidenced by the bond continued; that the repeal affected the remedy only and did not impair the obligation of the contract in a constitutional sense; that, the 90-day period and the year limitation not having run when the new charter became effective, suit could be brought without giving notice and after the year; and that upon the repeal the general statute containing a like condition and limitation did not apply to a prior accrued cause of action.

2. On February 20, 1913, McDonnell gave the Standard Company a six months' note for the amount due. This was a valid extension. It was without the consent of the surety company. It claims that the extension released it.

A valid agreement between the principal and the creditor extending the time of payment, without the consent of the surety, releases him. Leithauser v. Baumeister, 47 Minn. 151, 49 N. W. 660; 28 Am. St. 336; Bandler v. Bradley, 110 Minn. 66, 124 N. W. 644; Farmers Supply Co. v. Weis, 115 Minn. 428, 132 N. W. 917; J. R. Watkins Medical Co. v. McCall, 116 Minn. 389, 133 N. W. 966; 3 Dunnell, Minn. Dig. § 9096, and cases cited. The reason is sometimes said to be that an extension deprives the surety, who is entitled to subrogation upon payment, of the right to sue immediately, and from this the law conclusively presumes injury. See Travers v. Dorr, 60 Minn. 173, 62 N. W. 269. The result does not come from a provision to that effect in the contract, for there is none. It comes from a rule of construction adopted by the law for the protection of sureties. They are favorites of the law. It permits the creditor to do nothing which will injure them; and it has come to presume that certain things result in injury and will not inquire. The rule of *strictissimi juris* is applied in their favor, and largely the reason is that their undertaking is gratuitous. The defendant is a paid surety. The coming of corporations authorized by statute to become sureties, receiving premiums for the risks they assume, brings a distinct change in the business of securing the performance of contracts. The law meets the changed business situation by the changed construction. The rule of construction applicable to the contract of a gratuitous surety, always so much the favorite of courts that every intendment is in his favor, does not apply when the surety is a paid surety. Their undertakings are in the nature of insurance contracts. Lakeside Land Co. v. Empire State Surety Co. 105 Minn. 213, 117 N. W. 431; Brandrup v. Empire State Surety Co. 111 Minn. 376, 127 N. W. 424; George A. Hormel & Co. v. American Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L.R.A.(N.S.) 513; Allen v. Eneroth, 118 Minn. 476, 137 N. W. 16. Our cases reflect the holdings of other courts. The unmistakable trend is as stated and the result is wholesome. Note to George A. Hormel & Co. v. American Bonding Co. [112 Minn. 288, 128 N. W. 12], in 33 L.R.A.(N.S.) 513, note

to Philadelphia v. Fidelity & Deposit Co. 231 Pa. St. 208, 80 Atl. 62, in Ann. Cas. 1914B, 1085; 13 Michigan Law Rev. 245; 29 Harvard Law Rev. 314; 3 Cal. Law Rev. 169. An extension of the time of payment does not of itself release the surety. Guaranty Co. v. Pressed Brick Co. 191 U. S. 416, 24 Sup. Ct. 142, 48 L. ed. 242; Philadelphia v. Fidelity & Deposit Co. 231 Pa. St. 208, 80 Atl. 62, Ann. Cas. 1912B, 1085; People v. Traves (Mich.) 154 N. W. 130; United States v. Aetna Ind. Co. 40 Wash. 87, 82 Pac. 171; United States v. Lynch (D. C.) 192 Fed. 364; United States F. & G. Co. v. United States, 178 Fed. 692, 102 C. C. A. 192, affirming 172 Fed. 268; United States v. United States F. & G. Co. 178 Fed. 721; Pittsburg-Buffalo Co. v. American Fidelity Co. 219 Fed. 818, 135 C. C. A. 488. Some of the cases go upon the ground that there is no discharge by an extension of time, if the credit given is reasonable. This situation was involved in Guaranty Co. v. Pressed Brick Co. 191 U. S. 416, 24 Sup. Ct. 142, 48 L. ed. 242, and there the court said: "The facts of this case do not call for an expression of opinion as to whether, if an unusual credit were given, and in the meantime the principal obligor had become insolvent, or the surety were otherwise damnified by the delay, it might not be exonerated; since neither of these contingencies supervened in this case, we are remitted to the naked proposition whether the giving of a customary credit, with no evidence of loss thereby occasioned, is sufficient to discharge the surety. We find no difficulty whatever in answering this question in the negative. The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the subcontractor, with a view of furthering the beneficent object of the statute." In Philadelphia v. Fidelity & Deposit Co. 231 Pa. St. 208, 80 Atl. 62, Ann. Cas. 1912B, 1085, there were four successive extensions for a total period of substantially a year. The court said: "The appellant contends that the extensions of time granted by the use plaintiff's to the contractors without notice to or consent from the surety, released the latter from its liability on the bond. This would be true if the

bond were an ordinary contract of suretyship with an individual as surety." "Here the bond was for the protection of subcontractors and others in the construction of a public building. It differs from the ordinary suretyship, in that it is not an obligation for the performance of any particular contract. It was given for the benefit of all persons who might furnish labor or material in the course of the work, whether the contracts for such labor and material were in existence at the time the bond was executed or not, and without regard to the terms of purchase, whether for cash or on credit. In its nature the obligation was more of a contract of insurance than of suretyship; so long as the extensions of credit did not go beyond the two year limit for suit fixed in the bond, and in the absence of fraud or unfair dealing on the part of the subcontractors to the prejudice of the surety, or of material harm actually suffered, the surety was not released." The doctrine of these cases is that of the circuit court of appeals of this circuit. Chaffee v. United States F. & G. Co. 128 Fed. 918, 63 C. C. A. 644. We hold that the extension of time of payment, unless resultant harm is shown, does not discharge a paid surety in a bond such as is before us. It is not found that the surety suffered harm from the extension.

McDonnell filed his voluntary petition and was adjudged a bankrupt on November 19, 1913. He was discharged on February 12, 1914. The six months extension expired on August 20, 1913. From these facts harm does not conclusively appear.

Judgment affirmed.