AMERICAN FIDELITY CO. v. METROPOLITAN PAVING BRICK CO. ET AL.

1. Materialmen and Laborers not Required to Give Written Notice of Principal's Default to Sue on Bond.

A condition in the bond of a surety company, covering a contract entered into by county commissioners for road work, that immediate written notice shall be given to the surety company of any known default on the part of the principal in said bond, does not contemplate that materialmen and laborers must give such notice as a prerequisite to the enforcement of their claims.

2. Neither Delivery of Promissory Notes Nor Extension of Time Operates as Release of Surety.

The mere execution and delivery of promissory notes, in the absence of an agreement that the said notes are in settlement of the indebtedness which they represent, does not operate as payment or settlement of the claim or release the surety, nor does a reasonable extension of time for payment operate as a release of the surety.

*Lynch, Day, Fimple & Lynch, W. S. Ruff* and *C. B. McClintock,* for plaintiff in error.

*J. W. Craine,* for defendant in error.

## SHIELDS, J.

This was an action on a certain bond executed by the plaintiff in error as surety and others named therein as principals to the board of commissioners of Stark county, Ohio, to secure the faithful performance of a certain written contract entered into between said board of commissioners and said parties named therein as principals, for the improvement of what is

American Fidelity Co. v. Metropolitan Paving Brick Co.

known as the Canton-Cairo road by grading and paving said road and otherwise improving the same.

Said bond contained the following provision:

"Now, if the said party of the second part in the said foregoing agreement, shall well and truly execute all and singular the stipulations in said agreement by him to be executed, and shall pay all just and legal claims for labor performed upon and material furnished for the work specified in said agreement, then this obligation is to be void, otherwise to remain in full force and virtue in law, we agreeing and hereby consenting that this undertaking shall be for the use of any laborer or any person furnishing material, for a just claim, as aforesaid, as well as for the said county."

That for the purpose of carrying out said contract said named principals in said bond purchased for the Metropolitan Paving Brick Co. certain brick, used in making said improvement, amounting to the sum of $10,798.55, for which said sum with interest from February 1, 1916, judgment was prayed for.

After certain preliminary questions raised by motions and demurrer to said petition by the several defendants were disposed of, the American Fidelity Co. filed its separate answer setting up two principal defenses:

First, that said surety company signed said bond as surety only; that long before the completion of said improvement, the purchase price of the brick furnished by said brick company became due and payable, and that if any default by said contractors in the payment of said brick existed, such default existed long prior to the payment by said board of commissioners of the several amounts thereafter accruing under the several estimates made to said contractors, and that said amounts were largely in excess of said brick company's claim, all of which was known to said board of commissioners and its engineer, but unknown to the said surety company, and that notwithstanding the provisions of said contract and bond, neither said board of commissioners, nor its engineer, nor said brick company gave any notice to the said surety company of any default of the principals in said bond in the payment of said brick company's said claim, but wholly failed to do so, and that by reason thereof said American Fidelity Co. is and was thereby released and dis-

charged as surety from any and all liability to the said brick company.

Secondly, that after the purchase price of said brick became due, without the knowledge or consent of the said surety company, said brick company agreed with the principals in said bond to extend the time of payment for the purchase price of said brick, and that on February 1, 1916, in consideration of the execution and delivery to said brick company of certain notes by the said J. B. Smith and J. C. Krabill did so extend the time for the payment of said brick for a definite time, which said notes were accepted by said brick company in full settlement of its said claim; that said Smith and Krabill afterward executed a chattel mortgage on certain property to secure the payment of said wrongful extension of time the rights of said surety company. Further, that at the time the payment of said brick company's said claim was so extended, said principals in said bond were each financially responsible and then had property available on execution sufficient to satisfy said brick company's said claim, but that since said time their financial condition has materially changed and their property has become so encumbered as to render the same less available to execution, and that by reason of said wrongful extension of time the rights of said surety company have thereby been prejudiced and that said surety company became and was thereby discharged from all liability to said brick company under the conditions of said bond.

In an amendment to its said answer, said surety company set up that said brick company did not bring its action within one year from the time of furnishing said brick pursuant to the provisions of Sec. 6974 G. C. which became effective September, 1915.

Separate answers were filed by the defendants, Wise and Garaux, and a joint answer by the defendants Smith and Krabill in each of which the execution of notes of said Smith and Krabill to said brick company in settlement of said company's said claim was averred, and the subsequent execution of a chattel mortgage by them to secure the payment of said notes.

A separate reply was filed to each of said answers by said brick company, denying in substance the allegations therein, in-

American Fidelity Co. v. Metropolitan Paving Brick Co.

consistent with the allegations of the petition, and in reply to the second defense of said surety company, said brick company admitted that at the time of the filing of said answer an action was pending in said Stark county common pleas court on the part of said brick company to recover upon said promissory notes in cause known as No. 28264 therein, but that since the filing of said answer said cause has been dismissed.

With the issues thus made, a jury was waived and said cause was submitted to the court below, resulting in a judgment in favor of the brick company. By a petition in error filed in this court a reversal of said judgment is sought principally upon the specifications of error in grounds designated as Nos. 6 and 7, and which in substance are as follows:

"No. 6. Because said court erred in failing to find that the provisions contained in said bond requiring immediate written notice of any known default on the part of the principals in said bond was applicable to said brick company, and was a condition precedent to the right of said brick company to recover against the said surety company as surety on said bond; and that said court failed to find that the failure of said brick company to give such notice and to perform such precedent condition operated to release said surety company from all liability to said brick company, and was and is a bar to the right of said brick company to recover on said bond.

"No. 7. Because said court erred in failing to find that under the terms and conditions of said bond rendering the same available to material men, the duty devolved on said brick company to notify said surety company of any default known to it on the part of the principals in said bond within a reasonable time; and also erred in failing to find that said surety company was released from any and all liability to said brick company on account of the latter named company's failure to give such notice."

It is fundamental that a surety ordinarily is held liable to the strict letter of his contract and that such contracts receive a strict construction by courts. While that is true of individual sureties, courts of equity recognize a distinction between a surety signing for another gratuitously as a mere accommodation and a surety company engaged in the business of furnishing bonds for profit, the latter not being accorded the same degree of pro-

tection as the former. This distinction is recognized by both the United States and state courts generally and, among others, the case of *Topeka* v. *Federal Union Surety Co.*, 213 Fed. 958, may be cited where it was held:

"The general rule that a surety should be held only where his liability is fixed by the most strict law does not apply to a corporate surety, which is engaged in the business of becoming surety for premiums supposed to be based on the amount of the risk, but on the contrary, such contracts are construed most strongly against the surety."

And the court in its opinion on page 962 in said case says:

"Generally the surety is a favorite of the law, and should be held only where his liability is fixed by the most strict law. That is to say, what is known as the rule of *strictissimi juris* applies. These rules have no application to a corporate surety which is engaged in the business of becoming surety for premiums which are supposed to be based upon the amount of such risks. It is not in the position of a voluntary surety who signs his principal's obligation. Upon the contrary, surety bonds are usually on forms prepared by the company, and in place of a strict construction in favor of such surety the instrument is construed most strongly against the surety. Contracts of such companies bear a distinct analogy to insurance, and are largely governed by the same rules in construction."

Numerous cases are cited in the foregoing case both in the federal and state courts sustaining the same doctrine announced in said case. But while it is held that bonds so executed are not to be construed as an individual gratuitous surety, still the law clothes a surety company with certain legal rights which if ignored by those for whose benefit its bond is given, it may be relieved from its obligation of suretyship. We are not prepared to say and do not say, that any violation of the provisions of such bond would relieve such surety company, but interpreting the contract embraced in the bond in the light of the ordinary rules of law, reference is had to a violation of its terms in some material matter affecting the substantial rights of the surety company. Here it is claimed on behalf of the plaintiff in error that the Metropolitan Paving Brick Co. had knowledge of the provisions of the bond given for the protection of those furnish-

American Fidelity Co. v. Metropolitan Paving Brick Co.

ing material for said road improvement, and having such knowl-
edge it was chargeable with notice of the stipulations it con-
tained.   Among other things, said bond contained the following:

"Provided, that said surety shall be notified in writing of
any act on the part of the said principal, which shall involve a
loss for which the said surety is liable hereunder, immediately
after the occurrence of such act shall have come to the knowl-
edge of the board of engineers of the obligee herein, and a reg-
istered letter mailed to the surety, at its local office at Canton,
Ohio, shall be deemed sufficient notice within the meaning of
this bond.

"Provided further, that if the said principal shall fail to
comply with the conditions of said contract to such an extent
that the same shall be forfeited, then said surety shall have the
right and privilege to assume said contract, and to either com-
plete the same, or, by and with the previous consent of said
board, sublet the same, whichever surety may elect to do, pro-
vided it is done in accordance with said contract."

It was argued on behalf of the plaintiff in error that by the
terms of the bond already referred to herein providing that im-
mediate notice in writing should be given to said surety com-
pany of any default upon the part of the principals named there-
in is a condition precedent, and this condition not having been
complied with, the surety company was thereby relieved of lia-
bility on said bond.   As was held in the case of *Traveler's Ins.
Co. v. Myers & Co.*, 62 Ohio St. 529 [57 N. E. 458; 49 L. R. A.
760], "immediate written notice in said stipulation (referring
to an insurance contract) means written notice within a reason-
able time under the circumstances of the case, and where the
facts are not disputed what is a reasonable time is a question of
law."   Here it is conceded that the first notice of any default
under the bond given by the brick company was more than a
year after the completion and acceptance of the improvement by
the said board of commissioners, and if the duty of giving such
notice devolved upon the creditors of said contractors, it could
scarcely be contended that notice given by the brick company
was in contemplation of law given within a reasonable time.
That the provision requiring such notice to be given is a material
provision admits of no discussion, for it is not difficult to under-

stand that a surety company's liability may be lessened by prompt notification of a default on its indemnity bond. Counsel for plaintiff in error cite many adjudicated cases showing the materiality and necessity of notice when inserted in an indemnity bond, and when so inserted that the giving of such notice is a condition precedent to a recovery on such bond, while it is urged on behalf of said brick company that said cases do not meet the conditions of the case at bar and are therefore inapplicable. In short, it is insisted by said brick company that the bond here given was given to the said board of commissioners for and on behalf of Stark county, and not to the said brick company, and therefore if any notice was to be given the surety company of any default under said bond it was to be given by said board of commissioners or its engineer, and not by said brick company, which was not a party to said bond for said improvement. That said bond was given for the benefit of said Stark county and for laborers and materialmen is apparent, and the mere fact that there was no statute then in existence expressly authorizing provision to be made for their special benefit is of no moment. As was held in the case of *American Surety Co.* v. *Raeder,* 8 Circ. Dec. 684 (15 R. 47, 49), "the subject-matter of a contract was clearly within the jurisdiction of the board, and the contract one that the board had ample authority to make, independent of any express provisions of the statute." Such jurisdiction and authority were exercised here and we know of no instance where such provision has not been enforced for the protection of those for whom made, when not burdened with other conditions. As stated, it is urged here that by every rule of construction the obligation to give notice to the surety company of any default under said bond is extended to the materialmen, who it is claimed acted through and adopted the county as their agent, thereby assuming the same relation and obligation to the bond as the county. As we read the evidence in the case, while it was provided by the side-agreement between said brick company and said contractors that a copy of such agreement should be filed with said board of commissioners, it appears not to have been so filed, nor does it appear that any transaction was had at any time during the construction of said improve-

American Fidelity Co. v. Metropolitan Paving Brick Co.

ment, or afterward, between said board of commissioners and said brick company whereby the claim of the latter was brought to the knowledge or attention of said board of comissioners. So far as the record shows, said board of commissioners had no knowledge whatever of the existence of such claim. It was argued that it was the duty of said brick company to have looked after its interests by presenting to and filing its said claim with said board of commissioners before payment of the contract price for said improvement was made to said contractors, independent of any bond, on the ground that the policy of the law is to reward the vigilant creditor, but the rejoinder is made that the bond of the surety company was the continuing protection of said brick compay until its said claim was barred by the statute of limitations, and moreover, that the surety company, having given its bond for the faithful performance of the conditions thereof, it could not close its eyes and remain indifferent, to its liability, relying on notice to be given by materialmen whom they couldn't and didn't know when the bond was signed. No express provision is contained in said bond that notice shall be given by laborers or materialmen. If it was so intended, the inquiry is naturally suggested. Why was it not so designated in the bond? if deemed necessary for its protection, the company had the undoubted right to insert such provision in the bond. Quoting from the brief of counsel for plaintiff in error—

"The surety company was under no obligation to enter into this bond for the protection of the county and the materialmen, and if it saw fit to do so it had a legal right to carry into the bond such conditions as it thought advisable for its protection."

The provision mentioned expressly says "said surety shall be notified * * immediately after the occurrence of such act shall have come to the knowledge of the board or engineer of the obligee herein." We do not feel at liberty, aided by any rule of construction, to go outside of and read into this bond contract an interpretation which will restrict or extend the meaning of its provisions which appear clearly expressed therein. As applied to said contract, we are disposed to adopt the reasoning and apply the rule laid down by the Supreme Court in the case of *Slingluff* v. *Weaver*, 66 Ohio St. 621 [64 N. E. 574]. Without

further extending the discussion on this branch of the case, we are of the opinion that said bond does not contemplate that laborers or materialmen shall give the notice mentioned in said bond as a prerequisite to the bringing of suit on their claims.

Another ground of error alleged is that said brick company agreed to extend and did extend the time of payment of the purchase price of said brick for a definite time and for a consideration, without the knowledge and consent of the plaintiff in error, and to its prejudice. This allegation of error relates to the notes and chattel mortgage given by Smith and Krabill, two of the contractors, to the brick company, which it was claimed were accepted in settlement and payment of said brick company's account. The record shows a marked conflict in the testimony given by these parties and that of A. P. Maurer, the sales-manager of the brick company, as to the circumstances under which said notes were given and why they were given. The former testified that they were given in settlement and payment of said brick company's account, which was denied by Maurer, who further testified that they were given February 1, 1916, when the books of said company were balanced, and when the amount here sued on was found to be due said company from said contractors who executed said notes which were taken by said brick company not as payment of said account, but as security therefor, and that no credit was ever given them or entered on the books of said company for said notes. The trial court was clothed with the prerogative of a jury to determine the credibility of witnesses and the weight to be given to their testimony, and the judgment below would seem to indicate how said court viewed the testimony of these witnesses. However this may be, the suit brought on said notes was dismissed without prejudice before this suit was instituted. We might here add that the mere giving of these notes, in the absence of an agreement that the same should be and were in settlement of said brick company's account, would not operate as payment or satisfaction of said claim, nor would a reasonable extension of time, if given, necessarily operate to release a paid surety company. *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416 [48 L. R. A. 242; 24 Sup. Ct. 142]; *Standard Salt & Cement Co.* v. *National Surety Co.*,

Alter v. Alter.

134 Minn. 121 [158 N. W. 802], and numerous cases cited therein.

It was also argued that under the amended answer of the plaintiff in error in respect to the necessity of suit being brought within one year from the date of the delivery or furnishing of material, the provisions of the act referred to apply in this case to the material furnished by said brick company after September, 1915, when the provisions of said act became effective. It will be sufficient to say that the contract for the brick furnished by said brick company for this improvement appears to have been entered into a year or more before the passage of said act and therefore its provisions cannot be held to apply to this case.

As to the error assigned that "the findings and judgment of the court in said cause are not sustained by evidence and are clearly and manifestly against the weight of the evidence," we need only say that the bill of exceptions together with the briefs of counsel have been read, examined and considered by us with no little care with reference to the issues herein, and while in some aspects of the case our first impressions have yielded to the result of subsequent investigation, we have reached the conclusion that under the evidence and the law, the judgment of the court of common pleas was right and should be affirmed. It is so ordered. Exceptions.

HOUCK and PATTERSON, JJ., concur.